## AH-RS Coal Corporation v. The Farmers National Bank

*Robert E. Pryde* and *Leo Stepanian*, for plaintiff.
*James G. Callas*, for defendant.

GRAFF, J., July 11, 1973.—Plaintiff filed this action in assumpsit against defendant bank alleging that defendant refused to pay a check drawn upon it and this in violation of the provisions of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12-A PS §1-101, et seq. On trial of the case, all of the facts were stipulated with the exception that one question be submitted to the jury. This question was: "Did the President of Black Fox Mining and Development Corporation give verbal or oral notice of the stop payment order on the check to Mrs. Hoke, an official of the AH-RS Coal Corporation on March 13, 1972?" The answer to this question by the jury was no. It was further stipulated and agreed by counsel that the court decide the case upon the facts agreed to and found by the jury, as a matter of law.

The facts as they now exist are as follows: A check was made by Black Fox Mining and Development

Corporation, dated March 3, 1972, in the sum of $16,791.80, drawn on The Farmers National Bank of Kittanning, Pennsylvania, and made payable to AH-RS Coal Corporation. This check was delivered to the coal corporation and deposited by it in their bank account in Mellon National Bank & Trust Company, Butler, Pa., on March 10, 1972. Mellon National Bank & Trust Company delivered the check to The Farmers National Bank, Kittanning, Pa., on March 11, 1972, which was a Saturday and is a normal banking day of The Farmers National Bank. The Farmers National Bank received a telephone call stop payment order from the Black Fox Mining and Development Corporation on March 8, 1972, and the stop payment order was reduced to writing and signed by P. L. Toy, President, on March 15, 1972. No notice of dishonor was given by The Farmers National Bank to AH-RS Coal Corporation or to Mellon Bank within the Monday midnight deadline of March 13, 1972, nor was the check paid or returned within that time period. The check was returned by The Farmers National Bank to the Pittsburgh branch of the Federal Reserve by letter dated March 22, 1972. The Mellon Bank charged back the account of AH-RS Coal Corporation with the amount of the check on March 24, 1972. Plummer Toy, President of Black Fox Mining and Development Corporation, gave no notice of the stop payment order on the check to the officials of AH-RS Coal Corporation on or before March 13, 1972.

This case presents issues concerning the construction and validity of section 4-302 of the Uniform Commercial Code. We have been unable to find any Pennsylvania cases construing this section. We requested counsel on both sides to research for cases construing this section of the code in other jurisdictions, all to no avail. Our independent research has discovered two

cases in other jurisdictions dealing with this section and upon which comment will be later made. Section 4-302 relates to payor bank's responsibility for late return of item and provides as follows:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of Section 4-207), settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

"(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline."

"Midnight deadline" is defined by the code, supra, section 4-104(h), as follows: " 'Midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." The midnight deadline in this case was Monday, March 13, 1972.

The construction of section 4-302 of the Uniform Commercial Code was considered by the Supreme Court of Illinois in Rock Island Auction Sales, Inc. v. Empire Packing Co., Inc., 32 Ill. 2nd 269, 204 N.E. 2d 721, in a case similar to the one now under consideration. The court there held that the payor bank was liable for the full amount of the check which had been dishonored where the bank had not paid or returned the item and did not send notice of dishonor until after the midnight deadline. It was there contended that the bank was only responsible for its failure to exercise

ordinary care in handling the item. The court stated, inter alia, as follows, at pages 273-4:

"The legislature could have concluded that the failure of such a bank to meet its deadline would most frequently be the result of negligence, and fixed liability accordingly. . . . The statutory scheme emphasizes the importance of speed in the collection process. A legislative sanction designed to prevent conscious disregard of deadlines can not be characterized as arbitrary or unreasonable, nor can it be said to constitute a legislative encroachment on the functions of the judiciary."

To the same effect, see Farmers Coop. Livestock Mkt., Inc. v. Second Nat. Bank of London, (Ky. Ct. of Appeals) 427 S.W. 2d 247. Although the judgment of this court may seem to be harsh, nevertheless, we believe that the language of the Uniform Commercial Code is clear and we conclude that the judgment must be in favor of plaintiff.

The question of the bank's right to subrogation in this case was not raised or called to our attention. Section 4-407 of the code provides as follows:

"If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights . . .

"(b) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and

"(c) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

This section is considered and construed in South

Shore National Bank v. Donner, 104 N.J. Super. 169, 249 A.2d 25. It would appear, under this authority, that the bank does have a right of subrogation.

In furtherance of the stipulations and agreements, we now enter the following

## ORDER

And now, July 11, 1973, after due consideration, judgment is now entered in favor of plaintiff and against defendant in the amount of $16,791.80 with interest from March 14, 1972.